## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN TYRONE THOMAS,

        *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant*.

_____/

CASE NO. 2:18-cv-11544

DISTRICT JUDGE MARK A. GOLDSMITH

MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (R. 11 & 15)

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (R. 11), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 15), be **GRANTED**, and this case be **AFFIRMED**.

## II. REPORT

### A. Introduction and Procedural History

This is an action for judicial review of a final decision by the Commissioner of Social Security denying Plaintiff Kevin Thomas's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Title II, 42 U.S.C. § 401 *et seq.* and Title XVI, 42 U.S.C. § 301 *et seq.*, respectively. (R. 1). Pursuant to 28 U.S.C. §

1

636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge. (R. 3). Currently before the Court are Plaintiff's and Defendant's cross-motions for summary judgment (R. 11, 15).

Plaintiff filed the applications for DIB and SSI at issue here on September 2, 2015, alleging onset on January 1, 2011. (R.9 at PageID.185, 192.) The alleged onset date was amended to July 1, 2015. (R.9 at PageID.42.) His claim was denied at the initial level on November 6, 2015. (R.9 at PageID.107-08.) After an administrative hearing was held at Plaintiff's request, (R.9 at PageID.129), Administrative Law Judge (ALJ) Andrew G. Sloss issued a decision finding that Plaintiff had not been under a disability from his amended alleged onset date of July 1, 2015, through the date of the decision, October 25, 2017. ((R.9 at PageID.50-51). The Appeals Council denied Plaintiff's request for review. (R.9 at PageID.30-32.) This action followed. (R. 1).

### B.  Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.*

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).  The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that

3

is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered him or her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the

4

claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2015, the amended alleged onset date. (R.9 at PageID.42.) Next, the ALJ determined Plaintiff had the following severe impairments: diabetes mellitus, peripheral neuropathy, hypertension, stage III chronic kidney disease, and coronary artery disease. (*Id.*) Additionally, he had a non-severe impairment of asthma. (*Id.*) He did not, however, have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R.9 at PageID.42-43.) The ALJ found that Plaintiff could not perform any past relevant work. (R.9 at PageID.49.) The ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R §§ 404.1567(a) and 416.967(a), except that he

> can occasionally climb ramps or stairs. The claimant must avoid concentrated exposure to extreme cold, extreme heat, and wetness. The claimant must avoid even moderate exposure to vibrations and to hazards. The claimant is limited to no overhead reaching.

(R.9 at PageID.44.) The ALJ further found that he could perform a significant number of jobs in the national economy—for example, administrative support clerk, DOT 209.587-010 (2,900,000 jobs), packer, DOT559.687-014 (64,000 jobs), and bench assembler, DOT 713.687-018 (34,000 jobs). (R.9 at PageID.50.) Thus, the ALJ determined that Plaintiff

had not been under a disability as defined in the Social Security Act during the relevant time period.

### E. Administrative Record

#### 1. Medical Evidence

The Court has reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2. Application Reports and Administrative Hearing

##### i. Plaintiff's Function Report

Plaintiff competed an adult function report on September 22, 2015. (R.9 at PageID.259-66.) In the report, Plaintiff described how his medical issues limit his ability to work in the following manner: "can not stand on my feet for no more than 5 to 10 minutes at a time for the pain is to[o] much." (R.9 at PageID.259.) As to daily activities, Plaintiff indicated that he did not have any problems with personal care other than he cannot stand in the tub for more than 5 minutes at a time. (R.9 at PageID.260.) Plaintiff reported that he is able to prepare sandwiches and food that can be microwaved and that his condition has not affected any changes in his cooking habits. (R.9 at PageID.261.) His family does all the chores, such as cleaning, laundry, repairs, etc. because Plaintiff is unable to stand on his feet to do all these things. (*Id.*) Plaintiff only goes out to doctor's appointments around twice a week, he does not have a car, but he is able to shop in stores once or twice a week for no more than an hour. (R.9 at PageID.262.) Plaintiff reported no difficulty in handling his own finances. (*Id.*) Plaintiff enjoys watching television, does not need reminders nor

6

does he need anyone to accompany him when he goes places. (R.9 at PageID.263.) Plaintiff indicated that since his condition began, there were "no changes in my social activities." (R.9 at PageID.264.) Plaintiff reported that he can walk for only "5-10 feet" before having to stop and rest, but that he has no problems paying attention or following written or oral directions and has no issues with authority figures. (R.9 at PageID.264-65.) Plaintiff was prescribed a cane on June 5, 2015 to help him ambulate. (R.9 at PageID.265.)

### ii.    Plaintiff's Testimony at the Hearing

An administrative hearing was held in Plaintiff's case on July 13, 2017. (R.9 at PageID.58-78.) Plaintiff testified that the problems that kept him from working are "[f]oot pains and I have problems with my feet going to sleep and standing on them." (R.9 at PageID.64.) Plaintiff's problems are "about the same" as when diagnosed in 2015. (*Id.*) Plaintiff takes medication for the neuropathy in his feet and for his diabetes and uses a pacemaker defibrillator. (R.9 at PageID.64-65.) Plaintiff indicated that these were the only issues that keep him from working, diabetic neuropathy and his heart condition. (R.9 at PageID.66-67.) Plaintiff's brother lives with him and does most of the chores around the house for him because Plaintiff mostly stays in bed or otherwise elevates his feet for "at least eight or nine hours" a day and he watches television most of the day. (R.9 at PageID.67, 70.) Plaintiff's brother brought him to the hearing and takes Plaintiff to his medical appointments since Plaintiff has never had a driver's license. (R.9 at PageID.68-69.) Plaintiff has other brothers that visit him  but he rarely goes out to see people. (R.9 at PageID.73.)

7

Plaintiff stated that he could stand "[n]o more than a good 30 minutes" and walk "[j]ust around the house." (R.9 at PageID.68.) Plaintiff did not bring his cane to the hearing because he only uses it "when I have to go to the doctor's and be on my feet for a while because, like I say, sometimes my feet go to sleep while I'm walking and I don't even know it and I've been stumbled over." (R.9 at PageID.72.) Plaintiff has had one right toe partially amputated and has had bones removed from a few other toes. (*Id.*) Plaintiff also indicated that he takes medication for his kidney disease but that there is no other treatment available. (*Id.*) Plaintiff said that he does not even go to the grocery store, his brother handles that task, and the only restaurants he goes to are drive-throughs with his brother doing the driving. (R.9 at PageID.73.)

### iii. The Vocational Expert's Testimony at the Hearing

Vocational Expert (VE) Judith Findora also testified at the hearing. (R.9 at PageID.74.) She began by classifying Plaintiff's past work as an HVAC installation helper (light, SVP 2). (*Id.*). Then the ALJ posed the first hypothetical:

> [A]ssume a person of the claimant's age, education, and past work, is limited to sedentary work as defined by the regulations except he can occasionally climb ramps or stairs. He must avoid concentrated exposure to extreme cold, to extreme heat and the wetness. He must avoid even moderate exposure to vibration and to hazards and is limited to no overhead reaching.

(R.9 at PageID.74-75.) The VE testified that such a person could not perform any of Plaintiff's past relevant work. (R.9 at PageID.75.) The VE also stated that such a person could perform other jobs in the national economy such as administrative support clerk, DOT 209.587-010 (290,000 jobs), packer, DOT 559.687-014(64,000 jobs), and bench assembler, DOT 713.687-018 (34,000 jobs). (*Id.*) If a person had to elevate his legs above

8

waist level throughout the day to alleviate pain, none of the jobs could accommodate that limitation. (*Id.*) The VE affirmed that her testimony was not inconsistent with the Dictionary of Occupational Titles; "however the DOT does not address elevating your legs nor does it differentiate between reaching overhead and in all other – directions." (R.9 at PageID.75-76.) When Plaintiff's counsel asked if jobs would be available to a worker who would miss more than two or three days per month because of pain, the need to visit doctors, side effects of medication, or the need to rest, the VE responded that such limitations would be work preclusive. (R.9 at PageID.76.)

## F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations at the time Plaintiff filed his claim carved the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513.[1] "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can

---

[1] Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 Fed. Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *rep. & rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018).

establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

10

404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. [2] The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the person's RFC, or the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242.

For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp.

---

[2] As Plaintiff's claim was filed before March 27, 2017, he continues to receive the benefit of the "treating source rule" found in § 404.1527. For claims filed on or after that date, the rules in § 404.1520c apply instead. 20 C.F.R. § 404.1527.

637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

In accordance with Social Security Ruling (SSR) 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination[3]—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

---

[3] **Error! Main Document Only.**Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

### G. Analysis

Plaintiff argues the ALJ erred by: (1) failing to properly assess the limiting effects of Plaintiff's symptoms; (2) disregarding the opinion of Plaintiff's treating physician, Dr. Ahmed, regarding the limiting effects of Plaintiff's conditions; and (3) failing to recognize Plaintiff's need to elevate his legs and to recognize how his conditions prevent him from sustaining an ordinary work routine without excessive breaks. (R.11) (order of questions presented has been rearranged for ease of analysis).

### 1.   Plaintiff's Complaints of Pain

Plaintiff contends that the ALJ failed to properly assess his symptoms and complaints of pain. An ALJ must consider the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) and SSR 16-3p, 2016 WL 1119029, at *1. As noted, credibility determinations regarding a claimant's subjective complaints rest with the ALJ, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), and generally cannot be disturbed absent a "compelling reason," *Sims*, 406 F. App'x at 981; *Warner*, 375 F.3d at 390.

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20

C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 16-3p, 2016 WL 1119029, at *5; SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7; SSR 96-7p, 1996 WL 374186, at *3.

Plaintiff specifically argues that although the ALJ's decision "describes some of Plaintiff's medical records and the medical opinions of various doctors, there is no explanation as to why the ALJ rejected the limiting effects Plaintiff complains of secondary to his diabetic partially amputated feet and coronary artery disease, including his disabling

14

pain, fatigue and need to elevate his legs." (R.11 at PageID.834.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R.9 at PageID.44.) The ALJ considered the chronology of medical evidence regarding Plaintiff's history of insulin-dependent diabetes mellitus, peripheral neuropathy, and hypertension. The ALJ noted that Plaintiff was hospitalized in late April 2015 for uncontrolled hypertension and chest pain. (R.9 at PageID.44.) During that hospital stay, evaluations revealed peripheral vascular disease, impaired renal function consistent with chronic kidney disease, and mild cardiomegaly. (R.9 at PageID.44-45.) The ALJ noted emergency medical services were needed on May 31, 2015, for extremely low blood sugar levels. (R.9 at PageID.45.) An EMG taken on June 3, 2015 showed mild to moderate sensory peripheral neuropathy of the lower extremities likely due to Plaintiff's diabetes. (*Id*.) The ALJ noted that Plaintiff was doing well by August 13, 2015, his blood pressure improved, and by January 2016, Plaintiff did not have any symptoms that suggested worsening heart failure. (*Id*.) The ALJ also noted that Dr. Modawi's notes in April 2016 stated that Plaintiff reported he "had 'been doing fairly well' and that his blood sugar had been fairly well controlled." (R.9 at PageID.46.) Although Plaintiff's blood pressure was elevated in June 2016, his cardiology notes in January 2017 indicated that Plaintiff "had been 'doing quite well,'" that Plaintiff was not experiencing symptoms of shortness of breath, dizziness, etc., and that his defibrillator was functioning well. (*Id*.) Plaintiff's high blood pressure was successfully

15

managed with medications. (*Id.*) The ALJ also noted that as a complication born of Plaintiff's diabetes, he underwent a right fourth metatarsal amputation on May 10, 2017. (*Id.*)

The ALJ found that although Plaintiff has well-documented issues with peripheral neuropathy due to his diabetes, even Plaintiff's treating physician concluded that none of Plaintiff's symptoms would prevent him from sitting for eight hours in a workday. (R.9 at PageID.48.) In addition, although his doctors advised Plaintiff to avoid lifting heavy weights, there was "no indication that the claimant could not lift and carry at least 10 pounds." (*Id.*) In addition, the ALJ found that there was no medical support for Plaintiff's assertion that he had to elevate his legs for "about 9 hours" during the day. (*Id.*) The ALJ credited other symptoms supported by medical evidence such as, no overhead lifting due to pacemaker implantation, limited to only occasional climbing of ramps or stairs due to Plaintiff's chest pain and foot pain, and avoiding exposure to extreme temperatures that might exacerbate foot pain from peripheral neuropathy. (*Id.*)

I suggest that the ALJ's determinations regarding the limiting effects of Plaintiff's symptoms are supported by substantial evidence cited by the ALJ in making his assessment as reiterated above. I further suggest that his findings are supported by a review of the medical evidence. When Plaintiff's treating physicians commented on how he was doing, he was noted to be doing quite well. (R.9 at PageID.333, 549, 575.) Although at times, lower extremity edema was noted (R.9 at PageID.344, 374), a great majority of the time, lower extremity edema was not present. (R.9 at PageID.333, 337, 350, 471, 508, 584, 626, 667, 672, 679, 675, 685, 690, 694, 698, 702, 706, 727, 731, 736.) Plaintiff's physicians

16

also noted a lack of chest pain or other cardiac symptoms, and a lack of urinary symptoms on many occasions. (R.9 at PageID.333, 350, 375, 380, 471, 508, 576, 577, 614, 626, 654,-56, 662, 667-68, 672-73, 675-76, 679-80, 685-86, 694-95, 698-99, 690-91, 702-03, 706-07, 712, 727, 731, 736.) In addition, the medical evidence shows only normal psychiatric and neurological evaluations, with negative findings as to any confusion or concentration issues. (R.9 at PageID.371, 375, 379-80, 467, 471, 550, 576, 577, 581, 614, 626, 654-56, 662, 667-68, 672-73, 685-86, 679-80, 675-76, 690-91, 694-95, 698-99, 702-03, 706-07, 712, 727, 731, 736.)

In sum, I suggest the ALJ adequately discussed the factors in 20 C.F.R. § 404.1529(c)(3) and that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms and complaints of pain.

## 2.        Treating Source Rule

Plaintiff contends that the ALJ "played doctor" rather than giving the appropriate weight to Dr. Khalid Ahmed's opinion that, as a result of Plaintiff's diabetes, hypertension, osteoarthritis and convulsions, that Plaintiff needs to elevate his legs, and that his pain and fatigue markedly interfere with his ability to maintain attention and concentration and markedly interfere with his ability to complete and sustain an ordinary workday or workweek without an unreasonable number of breaks, time off task, or rest periods. (R.11 at PageID.842-43.) ALJs use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

17

supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c).

After reviewing all the medical evidence and making some specific notations, some of which are highlighted above, the ALJ concluded that he gave "some weight" to the opinion that Plaintiff needed to elevate his right foot during his recuperation time following the amputation surgery, but the ALJ also found there was "no indication that this restriction would be permanent and outlive the normal recuperation period following this type of surgery." (R.9 at PageID.46.)

The ALJ noted that Dr. Noroyan, Plaintiff's podiatrist, concluded that Plaintiff was unable to work "because he was 'unable to stand.'" (R.9 at PageID.46.) However, the ALJ gave his opinion "little weight" because the ultimate decision regarding ability to work is reserved to the Commissioner and because his conclusion was not supported by any specific "diagnosis or any physical limitation associated with a diagnosis" and because "there is no support in the available medical record that the claimant was 'unable to stand.'" (*Id.*) The ALJ further noted that "[n]o treating physician observed that the claimant had difficulty standing" and although Plaintiff "occasionally used a cane, there is no evidence that a cane was prescribed by a treating physician." (*Id.*)

The ALJ assigned "partial weight" to Plaintiff's treating physician, Dr. Ahmed, who had treated Plaintiff for diabetes and hypertension since May 2015. (R.9 at PageID.47.) On July 7, 2017, Dr. Ahmed opined that Plaintiff was able to sit for 2 hours at a time for a total of 8 hours and stand for 1 hour at a time for a total of 2 hours during an

18

8-hour workday. (*Id.*) Plaintiff would need to sit and stand at his direction, he was extremely limited (5-10 times a day) in bending, squatting, kneeling and stooping but was able to use foot controls. (*Id.*) Plaintiff would need to elevate his legs to chest level and was extremely limited in his ability to push, pull, or reach above shoulder level but could perform simple grasping, reaching and fine manipulation. (*Id.*) Plaintiff could lift and carry up to 10 pounds frequently, but symptoms would markedly interfere with his abilities to understand, remember and carry out instruction, maintain attention and concentration for extended periods and work on a sustained and continuous basis, complete a normal workday or week without interruption, or perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Ahmed also concluded that Plaintiff would be off task in a typical workday more than the normal two 15-minute breaks and a 30-minute lunch. (*Id.*)

The ALJ noted that although Dr. Ahmed's opinion that Plaintiff could sit for 8 hours in an 8-hour workday was consistent with a sedentary RFC, "the lifting and postural limitations are too restrictive and are not supported by the medical evidence of record." (*Id.*) The ALJ also challenged Dr. Ahmed's findings regarding Plaintiff's limitations in the following: instructions, concentration, pace, and completion of a normal workday and week without being off task or taking breaks since there "is no indication in the available medical evidence of record" that he has any such limitations. (*Id.*) The ALJ did not only question the limitations Dr. Ahmed's opinion included, he also noted that although Dr. Ahmed opined that Plaintiff could operate foot controls, this conclusion was inconsistent with Plaintiff's chronic symptoms of numbness and tingling due to his peripheral

neuropathy. (*Id*.)

The ALJ assigned "partial weight" to the state examiner, Alyce Metoyer, D.O., because although she found that it was medically necessary for Plaintiff to use a cane, there was no medical evidence evincing such a requirement. (R.9 at PageID.47-48.)

I suggest that the ALJ properly considered all the medical source opinions and that he properly evaluated Dr. Ahmed's opinion. The ALJ supported his conclusions with specific references to the medical evidence, even noting when Dr. Ahmed's opinion was inconsistent with medical evidence that would support a limitation not assessed by Dr. Ahmed. (R.9 at PageID.47.) In addition, as noted above, not only was there no evidence of any psychiatric or neurological deficits, the medical evidence showed the opposite: normal psychiatric and neurological evaluations, with negative findings as to any confusion or concentration issues. (R.9 at PageID.371, 375, 379-80, 467, 471, 550, 576, 577, 581, 614, 626, 654-56, 662, 667-68, 672-73, 685-86, 679-80, 675-76, 690-91, 694-95, 698-99, 702-03, 706-07, 712, 727, 731, 736.)

Finally, Dr. Ahmed's medical source statement was a typed check-box form which did not provide any explanation or medical test results for the conclusions checked. (R.9 at PageID.810-11.) A physician's opinion posed as only a checkbox form tends to be "weak evidence," *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); thus, the ALJ did not err in finding it less than controlling or persuasive.

### 3. Plaintiff's RFC

Plaintiff argues that the ALJ should have incorporated Plaintiff's need to elevate

his legs and his inability to sustain an ordinary work schedule into the RFC presented to the VE; had the ALJ done so, he would have come to the proper conclusion that Plaintiff is disabled. (R.11 at PageID.837-41.) As to the inability to concentrate for a complete a workday or workweek, I suggest that ALJ's findings that Plaintiff would have this ability is supported by substantial evidence as discussed above. The ALJ also supported his findings as to Plaintiff's asserted need to elevate his legs for 9 hours per day by noting that such a drastic requirement was never mentioned in the medical record by any physician nor did Plaintiff ever report that he needed to do so to any of his physicians. The ALJ thus exercised his discretion in the evidentiary zone of choice and concluded that although medical evidence supported the notion that Plaintiff needed to elevate his right foot during his recuperation time following the amputation surgery, there was "no indication that this restriction would be permanent and outlive the normal recuperation period following this type of surgery." (R.9 at PageID.46.) This is also supported by the numerous references during Plaintiff's physical examinations where no lower extremity peripheral edema was found. (R.9 at PageID.333, 337, 350, 471, 508, 584, 626, 667, 672, 679, 675, 685, 690, 694, 698, 702, 706, 727, 731, 736.)

In conclusion, I suggest that the ALJ's determination was supported by substantial evidence for all the above reasons.

### H. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (R. 11), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 15), be **GRANTED**, and this case be **AFFIRMED**.

III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 26, 2019                         S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 26, 2019                         By s/Kristen Castaneda
                                             Case Manager

23