UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN TYRONE THOMAS,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 18-11544
HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 18), (2) ACCEPTING THE RECOMMENDATION OF THE MAGISTRATE JUDGE (Dkt. 17), (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 11), (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 15), AND AFFIRMING THE COMMISSIONER'S FINAL DECISION**

Plaintiff Kevin Tyrone Thomas appeals the final determination of the Commissioner of Social Security denying his claim for Disability Insurance Benefits and Supplemental Security Income benefits. The matter was referred to Magistrate Judge Patricia T. Morris for a Report and Recommendation ("R&R"). The parties filed cross-motions for summary judgment (Dkts. 11, 15), and Magistrate Judge Morris issued an R&R recommending that the Court grant the Commissioner's motion for summary judgment and deny Thomas' motion for summary judgment (Dkt. 17). Thomas filed objections to the R&R (Dkt. 18); the Commissioner subsequently filed a response (Dkt. 20).

For the reasons that follow, the Court overrules Thomas' objections and accepts the recommendation contained in the magistrate judge's R&R. The Commissioner's motion is granted, and Thomas' motion is denied. The final decision of the Commissioner is affirmed.

## I. LEGAL STANDARD

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by the [Administrative Law Judge ("ALJ")]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 425 (6th Cir. 2013).

## II. ANALYSIS

Thomas makes five objections to the magistrate judge's R&R. First, he argues that the magistrate judge erred by failing to provide a meaningful summary or accurate description of the medical evidence in the record. Second, he argues that the magistrate judge erred by considering the applicability of Social Security Ruling ("SSR") 96-7p. Third, he argues that the magistrate judge erred by mischaracterizing Thomas' argument with respect to his residual functional capacity ("RFC"). Fourth, he argues that the magistrate judge erred by failing to address his argument that Thomas cannot persevere through a normal work week. Finally, he argues the

magistrate judge erred by stating that the record does not reflect any psychiatric or neurological deficits. The Court will take each objection in turn.

**A. Objection One**

In his first objection, Thomas argues that the magistrate judge erred by failing to provide a meaningful summary or accurate description of the medical evidence in the record. Obj. at 2. However, Thomas cites no authority to suggest that the magistrate judge was required to do so. Nonetheless, the magistrate judge provided record citations and thorough evaluation of the record where appropriate to address the parties' arguments. Nothing more is required. Therefore, Thomas' first objection is overruled.

**B. Objection Two**

In his second objection, Thomas argues that the magistrate judge erred by applying the incorrect legal standard and by finding the ALJ properly considered the intensity and persistence of his symptoms under SSR 16-3p. Obj. at 6-7.[1] Thomas is wrong on both counts.

The magistrate judge used the correct legal standard. She explained that under SSR 16-3p (the applicable Ruling), an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering Thomas' testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 16-3p. R&R at 12. However, Thomas has identified some confusion because the magistrate judge also cites SSR 96-7p, which was rescinded by SSR 16-3p. SSR 16-3p rescinded and superseded SSR 96-7p, in part to eliminate the use of the term "credibility" and to clarify that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304 *1 (S.S.A. Oct. 25,

---

[1] Thomas' attorney also makes much of an obvious scrivener's error in the magistrate judge's report. R&R at 12 n.3. The error is not, as counsel argues, "where the Magistrate Judge appears to recognize there is a problem with her report where she writes in bold '**Error! Main Document Only.**'" Obj. at 8. The scrivener's error is a typographical error, nothing more.

2017). SSR 16-3p directs ALJs to consider "the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Id.

Thomas is mistaken that the magistrate judge applied the wrong SSR. The magistrate judge noted that although SSR 16-3p rescinded SSR 96-7p, the underlying regulation, 20 C.F.R. § 404.1529(c), has remained materially unchanged. R&R at 12 n.3. She further notes that she agrees with other courts in this district that SSR 96-7p should be applied to cases arising prior to its rescission. R&R at 12 n.3. These observations are uncontroversial and are explicit in SSR 16-3p at *1. The better reading of the magistrate judge's statements is that because SSR 16-3p and SSR 96-7p are materially the same as to the underlying regulation, decisions discussing SSR 96-7p's application provide useful analysis to the extent that they do not follow the credibility concerns explicitly rejected by SSR 16-3p. This reading is borne out by the magistrate judge's analysis where she applies both SSR 16-3p and SSR 96-7p and applicable cases to review Thomas' subjective symptoms. See R&R at 13-17. The magistrate judge did not apply the incorrect legal standard.

Thomas is also mistaken that the ALJ did not properly consider the intensity and persistence of his symptoms under SSR 16-3p. He argues that the ALJ merely gave "lip service" to the SSR 16-3p analysis. Obj. at 8. Not true. The ALJ followed the two-step analysis required by SSR 16-3p. First, the ALJ found that Thomas had medically determinable impairments (diabetes mellitus, peripheral neuropathy, and hypertension) that could reasonably be expected to produce his alleged symptoms (inability to work due to foot and leg pain). Admin. Record "AR" 15-19 (Dkt. 9). Second, he considered Thomas' subjective statements with respect to intensity, persistence, and the functionally limiting effects of his pain in light of the objective medical

4

evidence. Id. The ALJ was required to "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p at *4.

The ALJ conducted a thorough examination of the record. Thomas alleges a period of disability beginning July 1, 2015 through the date of the ALJ's decision, October 25, 2017. AR 10. The ALJ detailed Thomas' medical history starting with Thomas' hospitalization in late April 2015 for uncontrolled hypertension and chest pain. AR 15. The ALJ described Thomas' treatment with Dr. Ali Owda and Dr. Imad Modawi, specialists in kidney disease and hypertension, his dangerous blood sugar levels in May 2015, and the testing the following month revealing mild to moderate sensory peripheral neuropathy of his lower extremities (likely due to diabetes). AR 16. By August 13, 2015, Dr. Modawi wrote to Thomas' primary physician, Dr. Julian Moore, to report that Thomas "has been doing fairly well." AR 229. Thomas showed no lower extremity edema. Id.

The ALJ noted that Thomas suffered from foot ulcers secondary to diabetes mellitus in February 2016 and that he was referred to a pain clinic, although there is no evidence that he took advantage of the pain clinic's services. Id. By April 2016, Dr. Modawi again noted that Thomas "has been doing fairly well," and observed no lower extremity edema. AR 471-472. In January 2017, Thomas' cardiologist reported that Thomas was "doing quite well," and that he reported no "symptoms of chest pain, shortness of breath, dizziness, lightheadedness, palpitations, presyncope or syncope." AR 514. The cardiologist examined Thomas' extremities and stated, "[n]o clubbing, edema or cyanosis noted. Bilateral peripheral pulses are normal and equal." AR 515.

Thomas had his right fourth metatarsal amputated in May 2017, due to recurrent skin ulcerations and loss of sensation. The procedure went well, and he was sent home to recover with instructions "to remain weightbearing as tolerated in postoperative shoe, to keep the dressing clean, dry and intact, to elevate the foot while at rest and to take pain medication as directed." AR 709-710. The ALJ gave some weight to the medical opinion that Thomas was required to keep his right foot elevated during his post-operation recovery. AR 17.

In July 2017, Thomas' most recent primary care physician, Dr. Khalid Ahmed, completed a medical source statement reflecting that during an eight-hour workday, Thomas can sit for eight hours, stand for two hours, and walk for one hour. AR 774. Dr. Ahmed also indicated that Thomas can sit for two hours uninterrupted, stand for two hours uninterrupted, and walk for one hour uninterrupted. Id. However, the statement also reflected that Thomas should elevate his legs at chest level for some unspecified period of time, and that Thomas' pain, fatigue, or other symptoms markedly interfere with his ability to "understand, remember and/or carry out instructions," "maintain attention and concentration for extended periods of time," and that it would likely result in Thomas being off task in a typical workday for more than two fifteen-minute breaks and a thirty-minute lunch. AR 775.

The ALJ gave partial weight to Thomas' primary care physician regarding his ability to perform basic work activities but explained that the medical record did not support that Thomas' pain markedly limited his psychiatric functions. See AR 18. The ALJ also gave partial weight to a State examiner's opinion with respect to Thomas' ability to work at the sedentary exertional level, but not to the State examiner's opinion that Thomas required a cane to ambulate, because that was also not supported by the medical records. Id.

Although the ALJ found that Thomas had well-documented medical conditions, he found Thomas' subjective description of his limitations unsupported by the objective medical evidence. AR 19. Based on his review of the record, the ALJ found that Thomas could work at the sedentary exertional level. Id.

The ALJ conducted a proper examination of the entire record and explained his reasons for reaching his result in the manner prescribed by SSR 16-3p. Accordingly, this objection is overruled.

**C. Objection Three**

In his third objection, Thomas argues that the magistrate judge erred by failing to recognize the ALJ's legal error in calculating Thomas' RFC. Obj. at 9-10. He argues that the ALJ mischaracterized Thomas' argument with respect to his RFC by focusing on his asserted "need to elevate his legs for 9 hours per day." Obj. at 9. He says that he never made that argument and instead cited evidence in the record that the ALJ failed to consider and incorporate into his RFC. Id. Thomas is partially correct.

The ALJ found that Thomas had the following RFC:

> [The claimant can] perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can occasionally climb ramps or stairs. The claimant must avoid concentrated exposure to extreme cold, extreme heat, and wetness. The claimant must avoid even moderate exposure to vibration and to hazards. The claimant is limited to no overhead reaching.

AR 15. The ALJ did not include leg elevation in the RFC because he found that there was "no support in the medical evidence of record for the claimant's assertion that he has to elevate his legs throughout the day for about 9 hours." AR 19. This statement presumably is based on the following exchange that occurred during Thomas' oral examination:

> Q   Okay. And you mentioned you elevate your legs, how often while you're waking do you have your – legs elevated?
>
> A   While I'm woke [sic]?
>
> Q   When you're awake during the day, watching TV pretty much it seems like?
>
> A   Up to about at least eight or nine hours.
>
> Q   Okay. Does that help them?
>
> A   I mean it keeps the swelling down.
>
> Q   If you're up on them do they swell?
>
> A   Yes.

AR 41.

Thomas argues that he never represented that he <u>needed</u> to elevate his legs for <u>nine hours</u> a day. Obj. at 9. The Court agrees. In the above exchange, Thomas said simply that he elevates his legs for prolonged periods of time while at home. It does not appear that Thomas ever asserted that he is <u>required</u> to elevate his legs for such long durations. However, the ALJ's mischaracterization does not necessarily undermine his RFC finding. The question is whether Thomas must elevate his legs for some portion of the day that would preclude him from engaging in sedentary work. To that question, Thomas argues that the ALJ did not consider Dr. Noroyan's observation that Thomas cannot work because he cannot <u>stand</u> on the job. Obj. at 9. Dr. Noroyan's statement does not help Thomas.

Dr. Noroyan's medical statement does not suggest that sedentary work, where one sits for the majority of the work day, would be unavailable to Thomas or that any such limitation would be ongoing. The medical statement begins with a checkbox form that asks Thomas to fill out his previous work experience and training on lines A-E. AR 370. Thomas left the lines blank. <u>Id.</u>

Nonetheless, Dr. Noroyan checks a box that states Thomas is unable to work full-time because he is unable to stand, and Dr. Noroyan indicates that there was a period of time when Thomas could not perform the work described on lines A-E (which are blank). Based on the record, Thomas had previous work as a short order cook, an HVAC installation helper, and an injection-molding machine tender. AR 20. Presumably, Thomas conveyed his work experience to Dr. Noroyan and his notes reflect Thomas' inability to engage in work where standing is unavoidable, such as working as a short order cook. However, Dr. Noroyan's June 2015 notes also indicate that Thomas' foot ulcers improved with treatment and do not contradict Dr. Ahmed's July 2017 statements that during an eight-hour workday, Thomas can sit for eight hours, stand for two hours, and walk for one hour. AR 774.

Thomas also argues that the ALJ erred when formulating the RFC by not relying on Dr. Ahmed's statement that Thomas should elevate his legs at chest level. Obj. at 9. This argument is also unpersuasive, because Dr. Ahmed, like Dr. Noroyan, simply checked a box on the medical source statement indicating that Thomas should elevate his legs, but he does not indicate how often or for what period of time. AR 775. Additionally, it is not clear how to reconcile Dr. Ahmed's leg elevation recommendation with other areas of the same statement where he says that Thomas can sit for eight hours during an eight-hour workday, AR 774, which supports the ALJ's RFC determination that Thomas can engage in sedentary work. The problem is that "'[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'" Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Thomas argues that the ALJ should have included RFC limitations that accounted for leg elevation and that he had portions of his toes amputated. Obj. at 10. Admittedly, there is evidence

9

in the record that would support such limitations, however, administrative findings "are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts." Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). "If the [administrative] decision is supported by substantial evidence, a reviewing court must affirm." Id. (citing Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)). The ALJ's RFC finding was supported by substantial evidence. Accordingly, this objection is overruled.

### D. Objection Four

In his fourth objection, Thomas argues that the magistrate judge erred by failing to address his argument that he cannot persevere through a normal workweek. Obj. at 10. He argues that the ALJ should have considered his need for excessive breaks due to pain, fatigue, and lack of stamina when he formulated the RFC. Id. at 10-11 (citing SSR 96-8p). The Commissioner argues that the ALJ discussed the record thoroughly and noted the specific evidence leading to each of the functional limitations in the RFC. Resp. at 6. The Court agrees with the Commissioner.

In making the RFC assessment, the ALJ must follow SSR 96-8p, which requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" However, it is well settled that ALJ's are not required to discuss every piece of evidence in the administrative record. Kornecky v. CSS, 167 F. App'x 496, 508 (6th Cir. 2006).

> An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

Id. (quoting Loral Defense Systems–Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) (some marks omitted).

10

As noted above, the ALJ's RFC determination was supported by substantial evidence formulated after the ALJ performed an exhaustive review of Thomas' medical records, testimony, and other evidence. His factual findings as a whole show that he implicitly resolved Thomas' issues with his ability to persevere through a normal eight-hour workday. Accordingly, this objection is overruled.

### E. Objection Five

In his final objection, Thomas argues the magistrate judge erred by stating that the record does not reflect any psychiatric or neurological deficits. Obj. at 11. He argues that the magistrate judge erroneously stated there was no evidence of neurological abnormalities, which is demonstrably false in light of the extensive medical records of Thomas' neuropathy. Id. But Thomas misunderstands the magistrate judge's comment. She was speaking in reference to Thomas' mental capabilities and specifically whether he had any confusion or concentration issues. To that point, the magistrate judge found the medical record did not support such psychological deficits. R&R at 20.

Thomas also argues that under SSR 96-2p,[2] the ALJ did not give controlling weight to Dr. Ahmed's opinion with respect to the functional effects of fatigue, sleeplessness, and pain. Obj. at 12. But, as Thomas points out correctly, SSR 96-2p requires "the ALJ to give controlling weight to the opinion of Dr. Ahmed regarding the claimant's functional limitations <u>if that opinion is well supported and not inconsistent with other substantial evidence in the record</u>." Obj. at 14 (emphasis added). Dr. Ahmed's assertions that Thomas' pain, fatigue, or other symptoms markedly interferes with his ability to "understand, remember and/or carry out instructions," and "maintain attention and concentration for extended periods of time," and would likely result in Thomas being off task

---

[2] SSR 96-2p was rescinded for all claims filed on or after March 27, 2017. Because Thomas filed his claim before March 27, 2017, SSR 96-2p still applies to his claims.

11

in a typical workday for more than two fifteen-minute breaks and a thirty-minute lunch, AR 775, are not supported by the record. Dr. Ahmed does nothing more than check "Yes" next to each of these limitations in his medical source statement, but there is no further explanation. As noted above, form reports in which a physician's obligation is only to check a box is weak evidence at best. Hernandez, 644 F. App'x at 474 (6th Cir. 2016). The magistrate judge, on the other hand, cites numerous medical records finding no negative psychiatric issues. R&R at 20; see, e.g., AR 701 ("Psychiatric/Behavioral: Negative. Negative for behavioral problems and confusion.").

Accordingly, because Dr. Ahmed's checkbox opinion with respect to Thomas' psychiatric abilities is not supported by the record and is inconsistent with other substantial evidence, the ALJ did not err by failing to give that portion of Dr. Ahmed's statement controlling weight. Thomas' final objection is overruled.

### III. CONCLUSION

For the above-stated reasons, the Court overrules Thomas' objections (Dkt. 18) and accepts the recommendation contained in the magistrate judge's R&R (Dkt. 17). Thomas' motion for summary judgment (Dkt. 11) is denied. The Commissioner's motion for summary judgment (Dkt. 15) is granted and the final decision of the Commissioner is affirmed.

SO ORDERED.

Dated: September 26, 2019  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge